**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TOTAL SAFETY US, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-2782 |
| | § | |
| CON-DIVE, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Total Safety US, Inc., sued the defendant, Con-Dive, LLC, and the *in rem* defendants, the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER, seeking to recover $219,817.68 that Con-Dive allegedly owes for "necessaries" Total Safety provided these vessels in 2007 and 2008. Total Safety asserts that it has a maritime lien for the unpaid amount. In its corrected first amended verified complaint, Total Safety alleged breach of a maritime contract, quantum meruit, and promissory estoppel. Total Safety asserted federal jurisdiction under 28 U.S.C. §1333 and Federal Rule of Civil Procedure 9(h) as to its claims against Con-Dive and the Federal Maritime Lien Act, 46 U.S.C. § 31342, as to its *in rem* claims against the vessels.

Con-Dive moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on lack of subject-matter jurisdiction. Con-Dive argued that diversity is not present, Total Safety did not have a maritime contract, Total Safety did not supply "necessaries," and Total Safety did not perfect or record a maritime lien against the vessels based on the provision of necessaries. Con-Dive also argued that the vessels had not been served. (Docket Entry No. 14). This court treated the motion as one for summary judgment, (Docket Entry No. 19), and after limited discovery, Total Safety responded. (Docket Entry No. 22).

Based on the pleadings, the motion and response, the record, and the applicable law, this court denies Con-Dive's motion. A hearing is set for **August 10, 2009 at 9:00 a.m.** on Total Safety's motion for declaratory judgment.

The reasons for the ruling are set out below.

**I.     Background**

Total Safety submitted an affidavit from its Operations Manager, Larry Sneath, dated March 30, 2009. Sneath states that between 2007 and 2008, Total Safety rented "necessary equipment" to Con-Dive's vessels, the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER, both of which Con-Dive operated under charter in the Gulf of Mexico and were engaged in subsea pipe repair. (Docket Entry No. 22, Ex. A ¶¶ 3–15). Attached to Sneath's affidavit are numerous emails between representatives of Total Safety and Con-Dive in 2007 and 2008, describing the equipment that was rented.

Sneath's affidavit states that his "first interaction" with Con-Dive was on June 19, 2007, when Danny Cook, Project Manager and Head of Operations at Con-Dive, called "in a panic," seeking 125 thirty-minute Self-Contained Breathing Apparatuses (SCBAs) for the M/V BOLD ENDURANCE "as soon as possible." (Docket Entry No. 22, Ex. A ¶¶ 6, 10). Cook explained that Con-Dive needed the SCBAs to satisfy the safety requirements of Con-Dive's client, Petróleos Mexicanos (PeMex), Mexico's state-owned petroleum company. Cook feared that PeMex was going to shut down Con-Dive's operations because Con-Dive lacked required safety equipment on board the M/V BOLD ENDURANCE, which was set to operate in a "sour gas field." A sour gas field releases hydrogen sulfide (H2S), a "toxic and potentially life-threatening gaseous chemical." The SCBAs were to provide emergency breathing air for the crew of the vessel in the event of a release of hydrogen sulfide. (*Id.*, Ex. A ¶¶ 8–9). On June 21, 2007, Total Safety provided 125 SCBAs to Con-Dive for a rental fee of $1,000 per day. (*Id.*, Ex. A ¶ 11).

2

According to Sneath, Cook contacted Total Safety again in October 2007, this time requesting a "fixed gas detection system to be used and stored on the M/V BOLD ENDURANCE as well as the services of a technician to install and calibrate the system." The gas detection system was to be used to "detect unhealthy or dangerous levels of gaseous chemicals, including hydrogen sulfide." (*Id.*, Ex. A ¶ 12). In mid-October 2007, Total Safety provided a fixed gas detection system "and associated equipment" to the M/V BOLD ENDURANCE for a rental fee of $250 per day. (*Id.*, Ex. A ¶ 13).

Sneath's affidavit states that Con-Dive next contacted Total Safety in February 2008. Patrick McCullough, Con-Dive's Projects Quality, Health, Safety and Environment Manager, requested 78 thirty-minute SCBAs and a fixed gas detection system for use on the M/V OCEAN COMMANDER, which also would be operating in a sour gas field. (*Id.*, Ex. A ¶¶ 14–17). In February 2008, Total Safety provided 78 SCBAs for a rental fee of $624 per day and a fixed-gas detection system "and associated equipment" for a rental fee of $250 per day for use on the M/V OCEAN COMMANDER. (*Id.*, Ex. A ¶¶ 17, 18).

Total Safety also submitted an affidavit from Ronald Schilling, Total Safety's Corporate Credit Manager. According to Schilling, Con-Dive made partial payments on the SCBAs, gas detection systems, and installation services that it obtained for the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER, but still owes $219,817.68. (Docket Entry No. 22, Ex. B ¶ 8). Schilling's affidavit attaches purchase orders from Con-Dive to Total Safety dated June 21, 2007, September 12, 2007, October 17, 2007, and February 21, 2008. The purchase orders include product descriptions, price, and quantity terms for SCBAs, gas detection systems, installation services, and other items, all to be provided to the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER. The cost of the items described in the purchase orders totals $495,477.05. Attached to Schilling's

3

affidavit are post-delivery invoices that Total Safety sent to Con-Dive, with billing records showing the amounts Con-Dive paid and the amounts outstanding.

Total Safety includes with Schelling's affidavit a June 18, 2008 letter from Clay Etheridge, Con-Dive's C.E.O., to Total Safety. (*Id.*, Ex. B-1). In the letter, Etheridge admits that "Con-Dive has been remiss in staying current with certain vendor and supplier account payables." The letter proposes "a plan to bring each [Total Safety account] current," with payments of $41,574.88 on June 30, 2008; $31,000.00 on July 15, 2008; and $37,500.00 on July 31, 2008. (*Id.*). Etheridge's letter does not describe the accounts on which the money was owed. Total Safety alleges that Con-Dive failed to make any of the payments proposed in this letter. (Docket Entry No. 11 ¶ 10).

Total Safety also submits the transcript of the deposition of Daniela Tejada, Con-Dive's Commercial Manager and designated corporate representative. (Docket Entry No. 22, Ex. C). Tejada testified that Con-Dive's operations stopped after Hurricane Ike destroyed its offices in September 2008, and that all of Con-Dive's computers and servers were destroyed by water damage, although some paper documents were retrieved. (*Id.*, Ex. C at 8–9). Tejada was unaware of a formal contract between Total-Safety and Con-Dive for SCBAs, fixed gas detection systems, or installation services. Tejada testified that Con-Dive did have a formal contract with Total Safety for the purchase of "safety kits." (*Id.*, Ex. C at 18). Tejada testified the type of equipment at issue "was provided on the vessels that we chartered from the charterers," and would not generally be obtained from a supplier such as Total Safey. (*Id.*, Ex. C at 20–21). Tejada confirmed that Con-Dive had chartered the M/V BOLD ENDURANCE from a Canadian company called Secunda Marine and the M/V OCEAN COMMANDER from an Abu Dhabi company called Adams Offshore Limited. (*Id.*, Ex. C at 21–22*).*

Total Safety also submitted the charter agreement between Con-Dive and Adams Offshore Limited. (*Id.*, Ex. D). One section of the charter agreement is titled "Lien." It states, in relevant part:

> The Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel. . . . [T]he Charterers shall indemnity and hold the Owners harmless against any lien of whatsoever nature arising upon the Vessel during the Charter Period while she is under the control of the Charterers, and against any claims against the Owners arising out of the operation of the Vessel by the Charterers or out of any neglect of the Charterers in relation to the Vessel or the operation thereof. Should the Vessel be arrested by reason of claims or liens arising out of her operation hereunder, unless brought about by the neglect of the Owners, the Charterers shall at their own expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their own expense put up bail to secure release of the Vessel.

(*Id.*, Ex. D § 19).

Con-Dive contends that there is no maritime jurisdiction over Total Safety's claims against Con-Dive because the contract is a "rental agreement" that is not "maritime in nature." (Docket Entry No. 14 ¶ 10). Con-Dive also contends that the Maritime Lien Act does not provide a basis for *in rem* jurisdiction over the vessels because the equipment and services Total Safety provided do not qualify as "necessaries" under the Maritime Lien Act; there was no contract for these items between Total Safety and the "owner" or "person authorized by the owner" of the vessels; and there was no formal perfection or recordation of the lien. Each argument is analyzed below.

5

**II.     Analysis**

   **A.     Subject-Matter Jurisdiction Over the Claims Against Con-Dive**

Total Safety and Con-Dive agree that diversity is not present in this suit.  Con-Dive argues that there is no basis for federal question jurisdiction over Total Safety's claims against Con-Dive.  The breach of contract claims, according to Con-Dive, are outside 28 U.S.C. §1333, which gives federal district courts "original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction."  (Docket Entry No. 14 ¶ 10).  Total Safety counters that its pleadings "present a claim in admiralty or maritime jurisdiction, as Total Safety seeks compensation from Con-Dive for necessaries provided to vessels and/or arising out of maritime contract(s)."  (Docket Entry No. 22 ¶ 10).

The maritime nature of a contract is determined by its subject matter.  *Exxon Corp. v. Central Gulf Lines, Inc.* 500 U.S. 603, 612 (1991); *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 49 (2d Cir. 2008).  The issue is whether the contract is for maritime services or transactions.  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (citing *N. Pacific S.S. Co. v. Hall Bros. Marine Ry. and Shipbuilding Co.* 249 U.S. 119, 125 (1919)); *see also Theirot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986) ("Whether a particular contract can be characterized as maritime depends on the nature and character of the contract, not on the situs of its performance or execution."); 1 THOMAS J. SCHOENBAUM *ET AL.*, ADMIRALTY AND MARITIME LAW § 3-10 (4th ed. 2003) (A maritime contract "is one that . . . relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." (quoting *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992))).

"[T]he types of contracts that invoke admiralty jurisdiction are well established, . . . [and] include[ ] contracts to furnish services, supplies, or accessories to a particular vessel." SCHOENBAUM *ET AL.*, ADMIRALTY AND MARITIME LAW § 3-10. "[C]ontracts to furnish supplies or accessories to a particular vessel are maritime in nature, even if the supplier does not himself incorporate the product into the ship." *Statia Terminals N.V. v. Huber, Inc.*, No. Civ. A. 95-1633, 1998 WL 560358, at *35 (E.D. La. Aug. 31, 1998); *see also Har-Win, Inc. v. Consolidated Grain & Barge Co.*, 794 F.2d 985, 986–87 (5th Cir. 1986) (characterizing a contract to furnish barge covers to a particular vessel as maritime in nature); *Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F. Supp. 2d 399, 406–07 (S.D.N.Y 2007) (finding that a contract to supply fuel to a vessel was maritime in nature); *Elmwood Marine Servs., Inc. v. Int'l Towing & Transp. Co.*, No. Civ. A. 01-1820, 2002 WL 100622, at *2 (E.D. La. Jan. 23, 2002) (finding that an oral contract to provide equipment and labor to a vessel was maritime in nature).

An agreement to lease goods for use on a particular vessel is maritime in nature. *See CTI-Container Leasing Corp. v. Oceanic Ops. Corp.*, 682 F.2d 377, 381 (2d Cir. 1982) (lease of shipping containers to vessel was maritime in nature); *Interpool Ltd. v. Bernuth Agencies, Inc.* 959 F. Supp. 644, 650 (S.D.N.Y. 1997) *judgment aff'd* 129 F.3d 113 (2d Cir. 1997) (same); *Whittal v. Specialty Diving of Louisiana, Inc.*, No. 07-4181, 2008 WL 4691595, at *2 (E.D. La. Oct. 22, 2008) (a contract under which the contractor rented "dive equipment to lay pipeline in a navigable waterway" was a maritime contract); *Global Towing, L.L.C. v. Marine Tech. Servs., Inc.*, No. Civ. A. 98-1765, 2000 WL 235247, at *1 (E.D. La. Feb. 29, 2000) (an agreement to furnish precision navigation equipment for use in a site hazard survey was maritime in nature).

Total Safety has presented evidence that there was an agreement with Con-Dive that was maritime in nature. The record shows that Total Safety rented SCBAs and fixed gas detection systems and provided installation services to Con-Dive for the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER. Con-Dive rented these items for use in subsea pipe repair work conducted from these vessels. (Docket Entry No. 22, Ex. A). Total Safety has presented sufficient evidence about the maritime nature of the contract to show subject-matter jurisdiction over the claims against Con-Dive.

### B. *In rem* Jurisdiction Over the Vessels

Con-Dive contends that the Maritime Lien Act, 46 U.S.C. § 31342, does not provide a basis for *in rem* jurisdiction over the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER. (Docket Entry No. 14 at 3–4). The Maritime Lien Act provides, in relevant part:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
> (1) has a maritime lien on the vessel;
>
> (2) may bring a civil action in rem to enforce the lien; and
>
> (3) is not required to allege or prove in the action that credit was given to the vessel

46 U.S.C. §31342(a).

#### 1. "Necessaries"

Con-Dive argues that "Total Safety has failed to prove that it provided 'necessaries' to the M/V BOLD ENDURANCE or M/V OCEAN COMMANDER." (Docket Entry No. 14 ¶ 11). The record defeats dismissal on this basis. Con-Dive representative Daniela Tejada testified that to her knowledge Total Safety did not provide SCBAs, fixed gas detection systems, or installation services

to Con-Dive, and that such items are usually provided by the charterers. (Docket Entry No. 22, Ex. C at 18–32). But Total Safety presented contrary evidence that it supplied these items to Con-Dive for use on the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER. This evidence includes purchase orders issued by Con-Dive to Total Safety for SCBAs, fixed gas detection systems, and installation services; invoices and billing records created by Total Safety; the affidavit testimony of Sneath that such items were provided; and the June 18, 2008 letter from Etheridge, Con-Dive's C.E.O., acknowledging that Con-Dive owed Total Safety money for some items. Total Safety also presented evidence that the equipment and services it provided to Con-Dive qualify as "necessaries" under the Federal Maritime Lien Act. "Necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). Courts read the term expansively. The Fifth Circuit defines "necessaries" as "things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." *Gulf Marine and Indus. Supplies, Inc. v. GOLDEN PRINCE M/V*, 230 F.3d 178, 180 (5th Cir. 2000) (quoting *Equilease Corp v. M/V SAMPSON*, 793 F.2d 598, 603 (5th Cir. 1986)); *see also Equilease*, 793 F.2d at 603 (necessaries include "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function"); *In re Underwater Completion Team, Inc.*, 34 B.R. 206, 210 (Bkrtcy W.D. La. 1983) (finding that a special propulsion system that allowed a diving vessel to remain in place during a mission was a "necessary"). In *Trico Marine Operators, Inc. v. Falcon Drilling Co.*, 116 F.3d 159, 162 (5th Cir. 1997), the Fifth Circuit concluded that "drinking water and food for the crew as well as drilling equipment and supplies to support the

9

drilling activities conducted by the vessel" qualified as necessaries as a matter of law. Con-Dive has cited no case law providing a more restrictive definition of "necessaries."[1]

The SCBAs, fixed gas detection systems, and installation services that Total Safety provided to Con-Dive for the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER qualify as "necessaries" under the Federal Maritime Lien Act. The record shows that this equipment was necessary for these vessels to complete their mission of subsea pipe repair in sour gas fields. According to Sneath's affidavit, Con-Dive's Cook called "in a panic" because Con-Dive's client, PeMex, required SCBAs to protect against releases of hydrogen sulfide in sour gas fields. Cook stated that PeMex would shut down Con-Dive's pipe repair operations on the M/V BOLD ENDURANCE unless the SCBAs were obtained. (Docket Entry No. 22, Ex. A ¶7). Sneath's affidavit similarly states that the SCBAs for the M/V OCEAN COMMANDER "were required emergency equipment for the crew . . . because the vessel was going to be operating in a sour gas field." (*Id.*, Ex. A ¶ 15). According to Sneath, the fixed gas detection monitors supplied to the vessels were "used to detect unhealthy or dangerous levels of gaseous chemicals, including hydrogen sulfide"—the same risk for which the SCBAs were procured. (*Id.*, Ex. A ¶ 12). This equipment was necessary for continued subsea pipe repair activities on the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER, and was such that "a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." *Gulf Marine*, 230 F.3d at 180. Total Safety's evidence shows that the SCBAs, fixed gas detection

---

[1] The case law shows that definition of necessaries under the Federal Maritime Lien Act has historically been quite expansive. *See, e.g., Colonial Press of Miami, Inc. v. The Allen's Cay* 277 F.2d 540, 541 (5th Cir. 1960) (defining printing material meant for use on a vessel as a "necessary" for purposes of the Maritime Lien Act); *Allen v. The Contessa,* 196 F. Supp. 649, 651 (S.D. Tex. 1961) (finding that cigarettes provided on owner's request for shrimp boat expedition were "necessaries").

systems, and installation services supplied to the vessels qualify as "necessaries" under the Federal Maritime Lien Act.

### 2. Con-Dive was a "Person Authorized by the Owners" to Contract for the Vessels

Con-Dive argues that even if the equipment and services that Total Safety provided qualify as "necessaries," a maritime lien cannot arise because "Total Safety has failed to attach any contract between Total Safety and (1) the owner or (2) a person authorized by the owner" of the M/V BOLD ENDURANCE or M/V OCEAN COMMANDER. (Docket Entry No. 14 ¶ 11). Section 31342(a) of the Federal Marine Lien Act states that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." Section 31341(a) of the Act states that "[t]he following persons are presumed to have authority to procure necessaries for a vessel":

> (1) the owner**;**
>
> (2) the master;
>
> (3) a person entrusted with the management of the vessel at the port of supply; or
>
> (4) an *officer or agent* appointed by—
>
>> (A) the owner;
>>
>> (B) *a charterer*;
>>
>> (C) an owner pro hac vice; or
>>
>> (D) an agreed buyer in possession of the vessel.

46 U.S.C. §31341(a) (emphasis added).

11

The Fifth Circuit has held that "a 'charterer' is presumed to have authority to procure necessaries for a vessel." *Trico*, 116 F.3d at 161. The *Trico* court concluded that the plaintiff, which had provided "necessaries" to a particular vessel at the request of the vessel's charterer, was entitled to a maritime lien against that vessel. *Id.* at 162. Con-Dive does not dispute that it was the charterer of the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER. (Docket Entry No. 22, Ex. C at 21–22; Ex. D at 2). Nor does Con-Dive dispute that Cook and McCullough, who allegedly requested the SCBAs and fixed gas detection systems for use in these vessels, were its agents. (*Id.*, Ex. C at 42).[2]

This court has found that there was a maritime agreement between Total Safety and Con-Dive for the provision of goods and services. The undisputed evidence that Con-Dive was the charterer for the M/V BOLD ENDURANCE and M/V OCEAN COMMANDER and that Con-Dive's agents, Cook and McCullough, sought and procured necessaries from Total Safety for use on these vessels shows an agreement between Total Safety and "a person authorized by the owner of the vessel[s]."

Con-Dive also argues that Total Safety "has failed to attach any contract" for the provision of necessaries to the vessels. Con-Dive does not cite authority requiring that an agreement for the provision of necessaries be embodied in a formal written contract before it can give rise to a maritime lien under the Federal Maritime Lien Act. "The lack of any writing is not dispositive in maritime contracts. Oral contracts are generally regarded as valid by maritime law." *In re Tasch,*

---

[2] There is also evidence in the record that Con-Dive specifically contemplated that its activities as a charterer could result in a lien on the M/V OCEAN COMMANDER. Under the charter contract with Adams Offshore Ltd., Con-Dive agreed to "indemnity and hold the Owners harmless against any lien of whatsoever nature arising upon the Vessel during the Charter Period while she is under the control of the Charterers." (Docket Entry No. 22, Ex. D § 19).

*Inc.*, No. Civ. A. 98-3746, 2001 WL 1398644, at *15 (E.D. La. Nov. 8, 2001) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961)); *see also Kossick*, 365 U.S. at 742 (a maritime contract need not comply with state-law statute of frauds). Total Safety has presented substantial evidence of a contract in this case. This evidence includes purchase orders drafted by Con-Dive to order the items at issue from Total Safety; invoices sent from Total Safety to Con-Dive, and a written admission from Con-Dive's C.E.O. that Con-Dive owed Total Safety money. The lack of a formal, written contract does not provide a basis for summary dismissal.

    **3.  There is No Requirement of Perfection or Recordation Under the Maritime Lien Act**

  Con-Dive also asserts that Total Safety has provided no evidence that it perfected or recorded a maritime lien, and that absent such evidence, the Federal Maritime Lien Act does not apply. A maritime lien under the Federal Maritime Lien Act is created at the time necessaries are provided to a vessel. *Equilease*, 793 F.2d at 602 ("The lien arises when the debt arises, and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds."); *see also Maritrend, Inc. v. Serac & Co. (Shipping) Ltd.* 348 F.3d 469, 471 (5th Cir. 2003) ("[A] presumption arises that one furnishing supplies to a vessel acquires a maritime lien, and the party attacking this presumption has the burden of establishing that the personal credit of the owner or charterer was solely relied upon."). A maritime lien is "perfected" when the contract for the provision of necessaries is breached. *Bank One, Louisiana N.A. v. MR. DEAN MV* 293 F.3d 830, 833–34 (5th Cir. 2002); *see also Garrett Constr. Co. v. Knowles*, No. CC-05-281, 2008 WL 728203, at *1 (S.D. Tex. 2008) ("The perfection of a maritime lien does not require that a creditor record his lien, obtain possession of the vessel, or file a claim against the ship. Rather, the lien attaches and is perfected when the underlying debt or claim arises." (citations omitted)).

Total Safety has presented evidence that it provided necessaries to the M/V BOLD ENDURANCE and M/V OCEAN CHALLENGER at Con-Dive's request and that the necessaries were provided under a valid agreement between Total Safety and agents of Con-Dive, the charterer of the vessels. Total Safety has presented sufficient evidence to support *in rem* jurisdiction over the M/V BOLD ENDURANCE and M/V OCEAN CHALLENGER.

### C.  Service on the Vessels

Con-Dive also argues that the M/V BOLD ENDURANCE and M/V OCEAN CHALLENGER have not yet been served in this case. But *in rem* actions against vessels to recover under a maritime lien require no service. The proper procedure in *in rem* maritime actions is for the plaintiff to file a verified complaint that "describe[s] with reasonable particularity the property that is the subject of the action" and "state[s] that the property is within the district or will be within the district while the action is pending." FED. R. CIV. P., SUPP. R. ADM. C(2). Once filed, the "court must review the complaint and any supporting papers. If the conditions for an *in rem* action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel . . . ." *Id*. Rule C(3)(a)(I). The warrant must then be delivered to the marshal for service. *Id*. Rule C(3)(b)(I).

Total Safety has submitted a verified, amended complaint that describes with reasonable particularity the M/V BOLD ENDURANCE and the M/V OCEAN COMMANDER and states that these vessels "are presently[,] or will be during the pendency of this action, on the navigable waters of the United States." (Docket Entry No. 11 ¶¶ 11–12). The complaint requests that this court issue process directing the United States Marshal to effect a warrant for the arrest of the vessels.

Total Safety is not required to serve the M/V BOLD ENDURANCE and M/V OCEAN CHALLENGER.

**III.     Conclusion**

Con-Dive's motion for summary dismissal for lack of jurisdiction is denied.  A hearing is set for **August 10, 2009, at 9:00 a.m.** on Total Safety's motion for declaratory judgment.

SIGNED on June 23, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

15